UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL A.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

1:20-CV-538-LJV
DECISION & ORDER

---

On May 5, 2020, the plaintiff, Michael A. ("Michael"), brought this action under the Social Security Act ("the Act").  He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.  Docket Item 1.  On August 23, 2021, Michael moved for judgment on the pleadings, Docket Item 21, and on November 22, 2021, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 25.  Michael did not file a reply, and the time to do so now has passed.[2]  *See* Fed. R. App. P. 27(a).

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] On December 10, 2021, Michael requested an extension of time to respond to the Commissioner's cross-motion.  Docket Item 26.  This Court granted Michael's motion on December 14, 2021, and extended his time to reply until January 12, 2022.  Docket Item 27.

For the reasons that follow, this Court grants Michael's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

**DISCUSSION**

Michael argues that the ALJ erred in three ways. Docket Item 21-1. First, he argues that "the reasons set forth by the ALJ" to discount Michael's subjective complaints "are not substantiated in the record." *Id.* at 18. Second, Michael argues that the ALJ "did not properly consider the combined effect of his exertional and non-exertional impairments." *Id.* at 24. Third, Michael argues that the ALJ erred "by posing improper hypotheticals to the [vocational expert] that did not take into account [Michael's] limitations." *Id.* at 25.

This Court agrees that the ALJ erred and, because that error was to Michael's prejudice, remands the matter to the Commissioner.

To determine a claimant's residual functional capacity ("RFC"),[4] an ALJ must consider "all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1). That includes "all of [a claimant's] statements about [his or her] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [the claimant's] ability to work." *Id.* § 404.1529(a). "Evidence of pain is an important element in the adjudication of . . . [disability] claims, and must be thoroughly considered in calculating the RFC of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010).

---

[4] A claimant's RFC "is the most [he] can still do despite [his] limitations," 20 C.F.R. § 404.1545, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8P, 1996 WL 374184, at *2 (July 2, 1996)). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

3

But the ALJ "is not required to accept the claimant's subjective complaints without question." *Watson v. Berryhill*, 732 F. App'x 48, 51-52 (2d Cir. 2018) (summary order) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam)). "Whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.* at 52 (alteration omitted) (quoting SSR 96-7p, 1996 WL 374186, at *2).[5] And the reviewing court will "defer to an ALJ's decision to discredit subjective complaints if the decision is supported by substantial evidence." *Id.* (citing *Aponte v. Sec'y, Dep't of Health & Hum. Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984)).

Here, in evaluating Michael's subjective complaints and explaining the evidentiary basis for the RFC determination,[6] the ALJ found that "the claimant's statements about the intensity, persistence, and limiting effects" of Michael's symptoms were "inconsistent" with the record. Docket Item 11 at 28. The ALJ cited several factors upon which she based this finding including, *inter alia*, Michael's range of daily activities, his work history, and the improvement in his condition after undergoing spinal

---

[5] SSR 96-7p was rescinded and superseded on October 25, 2017 by SSR 16-3p, 2017 WL 5180304. This development did not alter the content of SSR 96-7p in any manner that is relevant to this case.

[6] The ALJ found that Michael has the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that Michael can "only occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch[,] or crawl; . . . never climb ladders, ropes[,] or scaffolds; [and] never repetitively bend at the waist or squat." Docket Item 11 at 25.

surgery.[7]  *Id.*  But in reaching that conclusion, the ALJ mischaracterized Michael's statements and cherry-picked evidence.  And for that reason, the ALJ's evaluation is not supported by substantial evidence.  *Cf. Richardson v. Barnhart*, 443 F. Supp. 2d 411, 421 (W.D.N.Y. July 6, 2006) ("The ALJ's mischaracterization is indicative that [her] analysis is not based upon substantial evidence"); *Younes v. Colvin*, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) ("'Cherry picking' can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both.") (citing *Genier*, 606 F.3d at 50).

For example, the ALJ found that Michael's subjective complaints of pain were inconsistent with "a wide range of [his] daily activities."  Docket Item 11 at 26.  But the evidence does not indicate that Michael's daily activities were as extensive as the ALJ makes it seem.  *Compare id.* at 25 (ALJ's citing Michael's testimony that he shops for groceries, cooks on the stove, washes dishes, and "mow[s] the lawn with a ride[-]on lawn mower"), with *id.* at 85-86 (Michael's testimony that he grocery shops *with his wife*) (emphasis added), *id.* at 103 (wife's testimony that she does almost all household chores including "the laundry [and] the dishes"), *id.* at 300 (Michael's report that "*when feeling well*" he can "use [a] riding lawn mower to cut grass," "vacuum in *short intervals*," and clean the counters, and that he can "cook on the stove" but "*can't stand long* [enough] to make big meals") (emphasis added), *id.* at 307 (Michael's report that his pain "limits or negets [sic] any activity").

---

[7] Michael underwent a "[l]eft laminectomy and diskectomy" on January 12, 2016, performed by Franco Vigna, M.D.  *See* Docket Item 11 at 359.

5

Likewise, the ALJ noted that Michael "likes to kayak as a hobby," *id.* at 26, and she referred to a treatment note from Franco Vigna, M.D., indicating that Michael went "kayaking, walking[,] and hiking," *id.* at 28.  Based on that, the ALJ found that Michael's subjective complaints of pain, including pain so severe that "he was unable to get out of bed," *id.*, were not credible.  *See id.* ("[W]hile the claimant reports exacerbations to pain levels [sic], such that he was unable to get out of bed, he reported in the same treatment note that he had been kayaking, walking[,] and hiking.  This range of activities is inconsistent with the claimant's alleged functional limitations.").  But the record does not support the conclusion that Michael actually engaged in those activities—other than very rarely—during the relevant time period.

More specifically, while Dr. Vigna's September 2016 note indeed mentioned kayaking, walking, and hiking, the meaning of that notation and its context is far from clear.  Dr. Vigna's report reads, in relevant part: "He states that in the kayak, walk, hike, yet on his bad days he cannot leave bed."  *See* Docket Item 12 at 238.  Exactly what that means is anyone's guess.[8]  Moreover, a fair reading of the record is that Michael only hoped to engage in those activities, not that he actually did.  *See id.* at 108 (in April 2016, Michael reported that he was "going to start bicycling and kayaking").  In fact, Michael testified in November 2018 that he "used to kayak" but that he does not go

---

[8] If the ALJ found Dr. Vigna's report to be ambiguous or confusing, the ALJ was obligated to recontact Dr. Vigna for an explanation.  *See Isernia v. Colvin*, 2015 WL 5567113, at *10 (E.D.N.Y. Sept. 22, 2015) ("The law is clear beyond cavil that where . . . a treating physician's opinion is found by the ALJ to be vague or unclear, it is incumbent on the ALJ to recontact the treating physician for clarification of his or her opinion."); *see also Scott v. Berryhill*, 2018 WL 4442882, at *4 (W.D.N.Y. Sept. 17, 2018) ("[T]he Commissioner's regulations indicate that the ALJ may recontact any 'medical source' where the evidence of record is incomplete or inconsistent, including where the evidence is 'ambiguous.'") (quoting 20 C.F.R. § 404.1520b(b)(2)(i)).

"much anymore," having gone only once in the past year and not at all the year before. Docket Item 11 at 88. So the ALJ's repeated references to kayaking, *id.* at 26, 27, 28, and the Commissioner's repeated citations of that activity, Docket Item 25-1 at 2, 7, 8, 9, 10, 11, are inapposite.

In other words, even if Michael occasionally tried to kayak and hike during the relevant period—*i.e.* the period between the alleged onset of disability on December 15, 2015, and the ALJ's decision on April 10, 2019—that alone was not good reason to discount his credibility. The ALJ "must consider all of the evidence in the case record" contemporaneously in evaluating a claimant's "statements about pain or other symptoms." *See* SSR 96-7P, 1996 WL 374186, at *4. For the reasons just stated, the ALJ did not do that here and, in fact, mischaracterized the evidence about Michael's level of activity. And while the ALJ was "not required to explicitly analyze every piece of conflicting evidence in the record," she also could not "'pick and choose' evidence in the record that supports [her] conclusions," *Dana F. o/b/o O.E.H. v. Berryhill*, 2019 WL 7067060, at *3 (N.D.N.Y. Dec. 23, 2019) (internal citation omitted) (quoting *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. Sept. 22, 2004)), as she did here.

The ALJ also found that "improved objective findings" after Michael's surgery, Docket Item 11 at 26, contradicted his complaints of persistent symptoms. *Compare id.* (ALJ's citing evidence of abnormalities prior to surgery including "multilevel disc protrusions," "almost nonexistent" sensation at "S1 on the left," "mild disc space narrowing at L5-S1," and "severe weakness" in legs), with *id.* at 26-28, (ALJ's citing post-operative examinations showing "normal gait," "negative straight leg raising," "grossly intact" sensation in lower extremities, and "full range of motion ["ROM"] in his

bilateral lower extremities"). But the objective medical evidence supports Michael's claims that his symptoms, including pain, persisted after surgery. For example, Dr. Vigna found that after Michael's surgery, Michael still had "[l]imited ROM with discomfort" in his spine, Docket Item 12 at 125, 137, and decreased sensation in his lower extremities "on the left versus the right" at S1, *id.* at 87, 109. Likewise, a consultant, David Brauer, M.D., observed limited flexion in Michael's lumbar spine nearly one year after the surgery. *Id.* at 337 (Michael's "[l]umbar spine shows flexion only to 30 degrees" and "lateral flexion 20 degrees."). So there was indeed objective evidence that corroborated Michael's complaints of pain.

What is more, in response to "Michael's progressively worsening low back pain" *six months after surgery*, *id.* at 118, Dr. Vigna ordered an MRI of Michael's lumbar spine to "evaluate him for recurrent disc herniation at L5-S1," *id.*, and that MRI revealed multiple abnormalities, *see id.* at 123 (MRI showed a "[d]essicated disc at L3-L4 with central disc protrusion and annular tear," "a broad-based annular bulge" at L4-L5, a "desiccated disc with annular bulge" at L5-S1 "resulting in severe bilateral recess and neural foraminal narrowing, left greater than right," and "left S1 nerve root scarring"). Dr. Vigna therefore referred Michael to a pain management specialist to try "left S1 nerve root block[s]." *Id.* at 125. Dr. Vigna also gave Michael the option of another surgery "to try to decrease his low back pain" and to "bring down his leg pain," *id.* at 136, but Dr. Vigna was not confident that another surgery would alleviate the pain*, id.*

So the ALJ mischaracterized the "improved objective findings" after Michael's surgery, Docket Item 11 at 26, and it is "well-settled [sic] that an ALJ may not mischaracterize the record, nor rely on such a mischaracterization to meet the

substantial evidence test." *See Cartwright v. Comm'r of Soc. Sec.*, 2020 WL 3263447, at *3 (W.D.N.Y. June 17, 2020) (citing *Hill v. Comm'r of Soc. Sec.*, 2017 WL 5632813, at *5 (S.D.N.Y. July 28, 2017)). Likewise, the ALJ did not adequately address significant evidence supporting Michael's testimony about his continued pain, and the ALJ's determination therefore was not "based on all of the relevant medical and other evidence." *See* 20 C.F.R. § 404.1545(a)(1), (3). Indeed, the ALJ seems to have simply cherry-picked the evidence to support her conclusion while ignoring significant evidence to the contrary. *Thomas v. Berryhill*, 337 F. Supp. 3d 235, 244 (W.D.N.Y. Oct. 2, 2018). For all those reasons, the ALJ's rejection of Michael's testimony about his physical condition cannot survive even the deferential substantial-evidence standard.

The ALJ also erred in finding that Michael's part-time work as a shuttle driver at "substantial gainful activity levels" was probative of his ability to work full time in other positions. *See* Docket Item 11 at 28 (noting that "[t]he claimant testified that he began working at his current job in May 2018, as a shuttle driver" and finding that his earnings there "were above [the] substantial gainful activity earnings threshold for certain months in 2018"). Although a claimant's "[e]arnings may . . . determine engagement in substantial gainful activity," *Meyers v. Astrue*, 681 F. Supp. 2d 388, 399 (W.D.N.Y. Jan. 14, 2010) (citing 20 C.F.R. § 404.1574), the ALJ also concluded that Michael's part-time employment as a shuttle driver was "an unsuccessful work attempt," Docket Item 11 at 23. For that reason, she erred in citing the work Michael performed in that position, *see id.* at 26, 28, as evidencing his ability to work at a higher level. *See Paris F. v. Comm'r of Soc. Sec.*, 2022 WL 2092904, at *4 (W.D.N.Y. June 10, 2022) ("If a period of work qualifies as an unsuccessful work attempt, it will not be considered to demonstrate an

9

ability to engage in substantial gainful activity") (citing 20 C.F.R. § 404.1574 (c)(4)); *see also Meyers*, 681 F. Supp. 2d at 411 ("That [the plaintiff] engaged in work on a part-time basis does not support a finding [that] she had the ability to engage in substantial gainful activity.") (citing *Melville*, 198 F.3d at 53–54).

Finally, the ALJ erred in failing to address—or even acknowledge—the lack of medical opinion evidence in the record.[9] The only medical opinion in the record is that of a one-time consultant, Dr. Brauer, who apparently did not review any medical records before making his determination. *See* Docket Item 12 at 335-39 (Dr. Brauer's report which does not refer to any medical records and opines only "[o]n the basis of the examination today"). That is particularly troubling because Dr. Brauer found no limitations on Michael's ability to sit, *see id.* at 338 ("[T]here are no limitations in the claimant's ability to sit"), and the RFC included no such limitation, *see* Docket Item 11 at 25, but the record is replete with medical evidence that includes Michael's reports that he could not sit for more than a few minutes, *see, e.g.,* Docket Item 12 at 122, 184, 193 (reported he can sit for "15 min[utes]" at most); *see also id.* (Dr. Vigna's noting history of low back pain "[a]ggravated by . . . sitting").

---

[9] Where, as here, "there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel.'" *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). When the claimant is receiving or has received ongoing treatment from a qualified medical professional, the Commissioner "will request a medical source statement [from the claimant's treating source] about what [the claimant] can still do despite [his] impairment(s)." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order) (quoting former 20 C.F.R. § 404.1513(b)(6)) (additional citation omitted). The Second Circuit has observed that the "plain text" of section 404.1513(b)(6) "does not appear to be conditional or hortatory: it states that the Commissioner 'will request a medical source statement' containing an opinion regarding the claimant's residual capacity. The regulation thus seems to impose on the ALJ a duty to solicit such medical opinions." *Id.*

As the Second Circuit has noted, a one-time snapshot taken by a consulting physician can easily miss important findings that a treating physician might better address.  *See Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (The ALJ "should not rely heavily on the findings of consultative physicians after a single examination [because] . . . a one-time snapshot of a claimant's status may not be indicative of [his] longitudinal mental health . . . The opinion of [a consultative examiner], in other words, [] does not provide a good reason for minimizing that of [a treating source].") (internal quotation marks and citation omitted) (citing *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)).  On remand, the ALJ therefore should consider requesting a medical source statement from Michael's treating physician to correct that evidentiary deficiency and properly evaluate Michael's claim.[10]

---

[10] This Court "will not reach the remaining issues raised by [Michael] because they may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 25, is DENIED, and Michael's motion for judgment on the pleadings, Docket Item 21, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: July 11, 2022
         Buffalo, New York

                                          */s/ Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE